625 So.2d 693 (1993)
In re AMTEXT, INC.
Louisiana Commission on Ethics for Public Employees.
No. 92 CW 1408.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
Timothy G. Schafer, Schafer & Schafer, New Orleans, for appellant.
R. Gray Sexton, Maris LeBlanc McCrory, Patricia H. Douglas, Com'n on Ethics for Public Employees, Baton Rouge, for appellee.
Before EDWARDS, CRAIN and LeBLANC, JJ.
CRAIN, Judge.
We granted this writ of certiorari to review a decision of the Commission on Ethics for Public Employees ("Commission"), wherein it concluded the sale of complimentary textbooks by faculty members of a public university and the purchase of those books, constitutes a violation of the Code of Governmental Ethics ("Code"). Advisory Opinions 88-20, State of Louisiana, (April 8, 1988) and Advisory Opinion 88-20A, State of Louisiana (August 21, 1991). Finding error *694 in the rulings of the Commission, the rulings are vacated and set aside.
The record reveals the following facts:
On February 5, 1988, a professor in the Department of Management at the Louisiana State University School of Business Administration wrote the Commission seeking an advisory opinion as to whether the sale of complimentary textbooks constituted a violation of this state's Code. He was guided by an opinion from the Alabama Ethics Commission wherein it was held that such conduct violated that state's code of ethics. Advisory Opinion, State of Alabama (Nov. 13, 1987).
On March 16, 1988, the Louisiana Commission advised the Louisiana State University professor of its decision that the sale of complimentary textbooks, by faculty members, at public schools and universities, is a violation of the Code.
A written opinion was issued April 8, 1988, wherein the Commission held that the Code does not per se prohibit the receipt of complimentary textbooks but the subsequent sale of these items by the public servant constitutes a violation of the codal provisions, Sections 1111(A) and 1115. La.R.S. 42:1111(A) and 42:1115.
On September 25, 1990, the Commission sent a letter to Ms. Barbara Matherne, d/b/a Text Book Service, advising her that she had violated Section 1117 of the Code (La.R.S. 42:1117), by offering to pay faculty members of public universities for complimentary copies of textbooks. Ethics Commission Docket 88-20. The letter also contained notice of a hearing to be held on November 28, 1990.[1]
On January 8, 1991, Amtext, Inc. filed a brief, as an interested party, seeking to have Advisory Opinion No. 88-20 of April 8, 1988 re-examined and modified.
On August 21, 1991, the Commission again considered this issue. Advisory Opinion No. 88-20A, State of Louisiana (August 21, 1991). In this opinion the Commission reaffirmed its prior opinion of April 8, 1988 and additionally found that the party purchasing the textbooks and giving payment for the same to the public servant is in violation of Section 1117 of the Code. La.R.S. 42:1117.
On March 26, 1992, Amtext, Inc. filed a petition for declaratory judgment in the district court. Following an extension of time, the Commission, on May 14, 1992, filed a declinatory exception of lack of jurisdiction and peremptory exception of no cause of action.
On July 7, 1992, Amtext, Inc. filed a notice of its intention to apply for supervisory writs. On July 13, 1992, the Commission allowed petitioner until July 28, 1992 to file its petition for supervisory writs.[2]
The petitioner's application for supervisory writs was filed with this Court on July 23, 1992.
In opposition to Amtext's application for supervisory writs, the Commission first argues that this application is untimely. The Commission reasons that since an appeal in this case would have been untimely, having been filed at a time in excess of 30 days from the rendition of the decision, that an application for supervisory writs filed beyond the 30 day appeal time is, likewise, too late. The Commission relies, for its position, upon Morris v. Transtates Petroleum, Inc., 258 La. 311, 246 So.2d 183 (1971) and State of Louisiana, ex rel. Shows v. Shows, 430 So.2d 816 (La.App. 2d Cir., 1983), writ granted, case remanded for perfection of appeal, 434 So.2d 1090 (La., 1983).
We find these two decisions distinguishable from, and not applicable to, the facts of this case. In Morris, id., and Shows, id., there existed a specified time within which the parties could appeal their judgments and they did not appeal within the specified times. The court then refused to allow use of its supervisory jurisdiction as this would frustrate the specific time constraints for seeking a review of the judgment by appeal. Thus, where the appeal time had elapsed, the *695 appellate court likewise refused to grant the application for supervisory writs.
This case is factually distinguishable from Morris, id., and Shows, id. in that, in this case there is no judgment, but rather, only an advisory opinion. Additionally, in this case, the aggrieved party has no right of appeal.
In discussing the sole remedy available to an aggrieved party from an advisory opinion of the Commission, this Court, in Board of Commissioners v. Commission on Ethics, 484 So.2d 845, 848-849 (La.App., 1st Cir. 1986), writ denied 487 So.2d 440 (La., 1986) stated:
There is no appeal from an advisory opinion rendered by the Commission. Louisiana Commission on Governmental Ethics v. Leake, 264 So.2d 675 (La.App. 1st Cir.1972).
* * * * * *
Hesse, however, has no available remedy to pursue. The Commission has rendered an advisory opinion at the request of the Levee District in reference to action by the District and Hesse. He has no appeal nor administrative relief from the advisory opinion. He knows that if he proceeds he will subject himself to possible civil penalties since the Commission has informed him of its position. Yet there is no further relief he can seek from the Commission. The courts are his only resort. Without resort to the courts at this point, the appellant would most certainly subject himself to civil penalties and the public embarrassment of being cited by the Commission. The alternative would be not to proceed with the contract. Then the Commission would be effectively prohibiting what might very well be a legitimate contractual arrangement simply by issuing advisory opinions.
* * * * * *
Whenever the Commission, following the statutory procedure, takes action, the person against whom the action is taken has the right to appeal that action to the First Circuit Court of Appeal. Thus, the statutory scheme places the Commission in the same position as a district court. Yet there must be judicial relief for the person or agency aggrieved by actions of the Commission where the administrative procedure for taking such action has not yet been initiated. Otherwise, the mere fact of possible action by the Commission could have a chilling effect on legitimate contractual relationships.
* * * * * *
It is apparently for these reasons that La.R.S. 42:1142 provides specifically that, "Any preliminary, procedural, or intermediate action or ruling by an ethics body is subject to the supervisory jurisdiction of the appellate court as provided by Article V, Section 10 of the Constitution." We hold that an advisory opinion by the Commission is a preliminary or intermediate action or ruling by an ethics body within the meaning of La.R.S. 42:1142. Hesse or the Levee District is entitled to invoke the supervisory jurisdiction of this court from the advisory opinion.
We find that this application for supervisory writs is the proper vehicle by which an aggrieved party can seek review of the Commission's advisory opinion. This application was filed before the return date set by the Commission and, as such, is timely.
Amtext, Inc. alleges in this application that the Commission's advisory opinions were in error in concluding that the sale of complimentary textbooks by a public university professor and the purchase of those books by a used textbook publishing company constitute a violation of the Code. Advisory Opinion 88-20, State of Louisiana (April 8, 1988) and Advisory Opinion 88-20A, State of Louisiana (August 21, 1991).
In reaching its conclusions in these two opinions the Commission expressed the following pertinent reasons:
Accordingly, it is the opinion and the conclusion of the Commission that, when a public servant sells a complimentary textbook and receives a "thing of economic value" for the sale, this subsequent sale renders the public servant in violation of the provision of Sections 1111A and 1115 of the Code of Governmental Ethics. The *696 Commission reaches this determination based upon its opinion that these textbooks are given to public servants only in their capacity as such and by virtue of their "duties and responsibilities" as university professors or faculty members. Thus, and within the framework of Section 1111A of the Code, the subsequent sale of the complimentary textbook and the receipt of a "thing of economic value" (in the form of the purchase price) by the public servant constitutes a private payment proscribed by Section 1111(A) of the Code. And, given the manifest relationship that these textbook publishing companies have with public universities and colleges, it is self-evident to the Commission that a textbook publishing company constitutes a source from which a public servant engaged by a public university or college is proscribed by Section 1115 of the Code from receiving a gift. And, while the initial receipt of the complimentary textbook by the publishing company does not constitute a gift to the public servant (as it does not at that time have any "economic value" to the public servant) the subsequent sale of that complimentary textbook by the public servant and the corresponding receipt of the purchase price warrants the conclusion that the transaction then becomes prohibited by reason of the application of Section 1115 of the Code of Governmental Ethics.
Furthermore, it is the opinion of the Commission that the purchase by the used textbook publishing company or its agent constitutes an activity that is likewise prohibited by applicable provisions of the Code of Governmental Ethics. (Emphasis Added).
The Commission thus relied upon La.R.S. 42:1111(A), 42:1115 and 42:1117 as controlling. These statutes read, in pertinent part, as follows:

PART II. ETHICAL STANDARDS FOR PUBLIC SERVANTS
La.R.S. 42:1111. Payment from nonpublic sources
A. Payments for services to the governmental entity. No public servant shall receive any thing of economic value, other than compensation and benefits from the governmental entity to which he is duly entitled, for the performance of the duties and responsibilities of his office or position; ... (Emphasis Added).
La.R.S. 42:1115. Gifts
A. No public servant shall solicit or accept, directly or indirectly, any thing of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public servant knows or reasonably should know that such person:
(1) Has or is seeking to obtain contractual or other business or financial relationships with the public servant's agency, or
(2) Is seeking, for compensation, to influence the passage or defeat of legislation by the public servant's agency.
B. No public employee shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public employee knows or reasonably should know that such person:
(1) Conducts operations or activities which are regulated by the public employee's agency.
(2) Has substantial economic interests which may be substantially affected by the performance or nonperformance of the public employee's official duty. (Emphasis Added)
La.R.S. 42:1117. Illegal payments
No public servant or other person shall give, pay, loan, transfer, or deliver or offer to give, pay, loan, transfer, or deliver, directly or indirectly, to any public servant or other person any thing of economic value which such public servant or other person would be prohibited from receiving by any provision of this Part. (Emphasis Added)
The pivotal issue underlying these transactions of receipt of the textbooks, their sale to and purchase by the used book dealers is *697 whether these transactions involve "anything of economic value". The Commission correctly pointed out that "anything of economic value" is defined by the Code as follows:
La.R.S. 42:1102. Definitions
Unless the context clearly indicates otherwise, the following words and terms, when used in this Chapter, shall have the following meanings:
* * * * * *
(22)(a) "Thing of economic value" means money or any other thing having economic value, except promotional items having no substantial resale value;
* * * * * *
It is clear from the statutory definition that textbooks may have a value, but nonetheless not be proscribed by the Code. La. R.S. 42:1102, 1111, 1115, and 1117. That is, if the textbooks constitute "promotional items having no substantial resale value" they are exempt from the prohibition of codal sections 1111, 1115 and 1117.
It was agreed that the complimentary books are promotional items. There was no hearing prior to the advisory opinion as to the value of the books sold; the Commission taking the position that any resale was prohibited. Consequently, we hold that Ethics Commission Opinions No. 88-20 and No. 88-20A are in error in categorically determining that the receipt, resale and purchase of complimentary textbooks constitute a violation of the Code. It is necessary that such a determination be made on a case-by-case basis.
Additionally, an argument was made that the universities of the State are concerned about the resale practice by their professors. If in fact this is the case, there is nothing which would preclude the universities from adopting policies prohibiting those professors in their employ from reselling complimentary textbooks, or alternatively, from requiring that funds derived from a sale be turned over to the University.
Finally, we note with interest and find persuasive the fact that this issue has been reconsidered by the Alabama Commission on Ethics. Advisory Opinion 1155, State of Alabama (August 30, 1988). After reconsideration, the Alabama Commission modified its original opinion and found that faculty members at institutions of higher learning may sell complimentary textbooks without violating their state's code of ethics, provided the faculty member does not solicit the textbook from the publisher and then sell it for personal gain. Moreover, the Alabama Commission determined that unsolicited textbooks become the sole property of the individual faculty member or teacher and they may dispose of it in any legal manner.
It is for this reason that we exercise our supervisory jurisdiction, grant this writ application and vacate and set aside Advisory Opinions 88-20 and 88-20A of the Commission. Costs of this proceeding in the amount of $63.00 are assessed against Respondent-Commission.
WRIT GRANTED; Advisory Opinions 88-20 and 88-20A vacated and set aside.
NOTES
[1] There is no evidence of the hearing against Ms. Matherne in the record.
[2] In granting time within which to file, the Commission reserved its rights to challenge the timeliness of petitioner's application.