656 So.2d 670 (1995)
LOUISIANA INSURANCE GUARANTY ASSOCIATION
v.
COMMISSION ON ETHICS FOR PUBLIC EMPLOYEES.
No. 95 CW 0021.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
Rehearing Denied June 21, 1995.
*671 Rolfe H. McCollister, Baton Rouge, for relator, La. Ins. Guar. Ass'n.
R. Gray Sexton, Maris LeBlanc McCrory, Patricia H. Douglas, Baton Rouge, for respondent, Com'n on Ethics for Public Employees.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
CARTER, Judge.
We granted supervisory writs in this case to review an advisory opinion of the Louisiana Commission on Ethics for Public Employees (Commission).

FACTS
On or about June 23, 1994, the Louisiana Insurance Guaranty Association (LIGA) requested an advisory opinion from the Commission as to whether LIGA's board of directors, staff, and contract employees were "public employees" within the meaning of the Code of Governmental Ethics, posing several hypothetical questions.[1] The Commission considered LIGA's request at its August 4, 1994, meeting, but took the matter under advisement. On October 21, 1994, the Commission concluded that "all members of the LIGA Board and all employees of LIGA are `public employees' as defined by the Code of Ethics." The Commission also concluded that "those individuals or businesses which have a contractual relationship with LIGA may also be public employees as defined in the Code of Ethics in certain situations." By letter, dated November 4, 1994, the Commission rendered a written opinion, advising LIGA as follows:
[A]ll of the members of the LIGA Board and ... all of the employees of LIGA are "public employees" as that term is used in Title 42, Chapter 15 of the Louisiana Revised Statutes and [as] that ... term is defined at Section 1102(18) of the Code of Governmental Ethics. Accordingly, as such, members of the board and the employees of LIGA are subject to the provisions of the Code of Governmental Ethics.
[A] person serving on the LIGA Board who is "in the insurance agency business" may be in violation of ... Sections 1111C(2)(d) and 1112B(2) and (3) as well as Section 1113B of the Code, depending on the particular facts that might subsequently be presented to the Commission in the *672 context of a specific request for an advisory opinion.
[A] member of the LIGA Board may be prohibited by virtue of the application of Section 1111C(2)(d) of the Code from rendering compensated services to a "law firm representing LIGA" and depending on the particular facts that might be presented to the Commission.
[T]hose persons who are engaged in the performance of a governmental function by virtue of a contractual relationship with LIGA may be "public employees" within the meaning of the provisions of the Code of Governmental Ethics and, again, depending on the particular facts that might be presented to the Commission for consideration.
On January 5, 1995, LIGA filed the instant application for supervisory writs with this court, assigning the following errors:
1. The Commission on Ethics for Public Employees erred in finding that the Officers, Directors, Employees, and Contract Employees of LIGA are "public employees" for the purposes of the authority of the Commission.
2. The Commission on Ethics for Public Employees erred in finding that the Officers, Directors, Employees, and Contract Employees of LIGA are subject to the authority of the Commission.
The Commission opposed the application, raising the following issues:
1. Should appellate review be granted of a purely advisory opinion rendered on the basis only of hypothetical "facts" without any real and adverse issues and absent a real and definable "case or controversy"?
2. May the board members and employees of a legislatively created insurance guaranty association which is subject to extensive governmental control and regulation avoid the application of the constitutionally mandated Ethics Code?

APPELLATE REVIEW OF ADVISORY OPINION
The Commission argues that LIGA's application for supervisory writs is premature in that there is no pending case or controversy between the parties.
LSA-R.S. 42:1142 A provides as follows:
Appeals to the Court of Appeal, First Circuit. Whenever action is taken against any public servant or person by an ethics body or by an agency head by order of the commission, or whenever any public servant or person is aggrieved by any action taken by an ethics body, he may appeal therefrom to the Court of Appeal, First Circuit, if application to the ethics body is made within thirty days after the decision of the ethics body becomes final. Any preliminary, procedural, or intermediate action or ruling by an ethics body is subject to the supervisory jurisdiction of the appellate court as provided by Article V, Section 10 of the constitution. The Court of Appeal, First Circuit, shall promulgate rules of procedure to be followed in taking and lodging such appeals. (emphasis added.)
The law is clear that an advisory opinion rendered by the Commission is a preliminary or intermediate action or ruling by an ethics body within the meaning of LSA-R.S. 42:1142. Midboe v. Commission on Ethics for Public Employees, 94-2270 (La. 11/30/94); 646 So.2d 351, 355; In re Amtext, Inc., 625 So.2d 693, 695 (La.App. 1st Cir.1993); Board of Commissioners, Fifth Louisiana Levee District v. Commission on Ethics for Public Employees, 484 So.2d 845, 849 (La.App. 1st Cir.), writ denied, 487 So.2d 440 (La.1986).
In the instant case, the application for supervisory writs filed by LIGA is the appropriate procedural vehicle for appellate review of an advisory opinion by the Commission. See City of Baton Rouge, Parish of East Baton Rouge, Donald Nijoka and Roy Hutchinson v. Commission on Ethics for Public Employees (La.App. 1st Cir. 1995), 655 So.2d 457, and Board of Trustees of the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge v. Commission on Ethics for Public Employees (La.App. 1st Cir. 1995), 655 So.2d 1355.

*673 APPLICABILITY OF CODE OF ETHICS TO LIGA

LSA-Const. art. 10, Section 21 provides as follows:
The legislature shall enact a code of ethics for all officials and employees of the state and its political subdivisions. The code shall be administered by one or more boards created by the legislature with qualifications, terms of office, duties, and powers provided by law. Decisions of a board shall be appealable, and the legislature shall provide a method of appeal.
This article directed the legislature to enact a code of ethics for all officials and employees of the state and its political subdivisions and to create one or more boards to administer the code. Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752, 755 (La.1983). Pursuant to this mandate, the legislature enacted the Code of Ethics for Governmental Employees, LSA-R.S. 42:1101 et seq. Glazer v. Commission on Ethics for Public Employees, 431 So.2d at 755. Among the multiple policy objectives of the Code of Ethics are impartiality, fairness, and equality of treatment toward those dealing with government; assurance that decisions of public importance will not be influenced by private considerations; maintenance of public confidence in government (wherein enters the matter of appearances); and prevention of use of public office for private gain. LSA-R.S. 42:1101 B; Glazer v. Commission on Ethics for Public Employees, 431 So.2d at 755.
In Glazer v. Commission on Ethics for Public Employees, 431 So.2d at 755-56, the Louisiana Supreme Court noted that:
[T]he primary objective of the legislation is to prevent public officers and employees from becoming involved in conflicts of interest. A conflict of interest is a situation which would require an official to serve two masters, presenting a potential, rather than an actuality, of wrongdoing. The wrongdoing does not have to occur in order for a prohibited conflict to exist. A public official may have done no wrong in the ordinary sense of the word, but a conflict of interest may put him in danger of doing wrong. The Code is aimed at avoiding even this danger. For this purpose, the Code of Ethics for Governmental Employees identifies certain types of conflicts of interests and prohibits conduct by public officials which would bring these conflicts into being. Additionally, the Code empowers the Commission on Ethics to determine when a conflict of interest exists and to impose certain sanctions. (citations omitted).
Moreover, there is no language in the constitutional provision which forbids the promulgation of a code of ethics that is applicable to persons other than public servants. Anzelmo v. Louisiana Commission on Ethics for Public Employees, 435 So.2d 1082, 1084 (La. App. 1st Cir.), writ denied, 441 So.2d 1220 (La.1983).
At issue in the instant writ application is whether LIGA or its Board of Directors, staff, and contract employees are subject to the provisions of the Ethics Code. LIGA contends that it is not a governmental entity, that it is not engaged in activities that are governmental functions, and that it is not subject to the direct supervisory control of any governmental employee or publicly elected official. As such, LIGA reasons that it, its directors, staff, and employees are not public employees subject to the Ethics Code.
The Ethics Code generally prohibits payments to public servants from nonpublic sources (LSA-R.S. 42:1111), participation in certain transactions involving a governmental entity (LSA-R.S. 42:1112), and assistance to certain persons after termination of public service (LSA-R.S. 42:1121), among other things. "Governmental entity" is defined in LSA-R.S. 42:1102(12) as "the state or any political subdivision which employs the public employee or employed the former public employee or to which the elected official is elected, as the case may be." LSA-R.S. 42:1102(18) defines a "public employee" as anyone, whether compensated or not, who is:
(a) An administrative officer or official of a governmental entity who is not filling an elective office.
(b) Appointed by any elected official when acting in an official capacity, and the appointment is to a post or position wherein the appointee is to serve the *674 governmental entity or an agency thereof, either as a member of an agency, or as an employee thereof.
(c) Engaged in the performance of a governmental function.
(d) Under the supervision or authority of an elected official or another employee of the governmental entity.
A public employee shall be in such status on days on which he performs no services as well as days on which he performs services. The termination of any particular term of employment of a public employee shall take effect on the day the termination is clearly evidenced.
The courts of this state have been confronted with the question of whether a certain entity was a state office or agency or whether a certain individual was a state or public officer on numerous occasions. See State v. Smith, 357 So.2d 505, 507 (La.1978). In Smith, the court noted that a consistent theme ran throughout the cases presented with this question. The following factors were considered in finding an entity to be a state or public agency or in finding an individual to be a state or public officer: (1) the entity was created by the legislature; (2) the powers were specifically defined by the legislature; (3) the property of the entity belonged to the public; and (4) the entity's functions were exclusively of a public character and performed solely for the public benefit. State v. Smith, 357 So.2d at 507.

1. Created by the legislature.
In the instant case, we note that LIGA is neither a person nor a corporation; it is a sui generis type of association. Louisiana Insurance Guaranty Association v. Gegenheimer, 93-3021 (La. 4/21/94); 636 So.2d 209, 210. As set forth in LSA-R.S. 22:1380 A, LIGA is a private non-profit, unincorporated legal entity. Louisiana Insurance Guaranty Association v. Gegenheimer, 93-3021 (La. 4/21/94); 636 So.2d at 210; Louisiana Insurance Guaranty Association v. Bernard, 393 So.2d 764, 767 (La.App. 1st Cir.1980). However, the legislature created the Louisiana Insurance Guaranty Association by enacting LSA-R.S. 22:1380. All insurers, as defined in LSA-R.S. 22:1379, are required, as a condition of their authority to transact insurance in this state, to become and remain members of LIGA. LSA-R.S. 22:1380 A. Further, we acknowledge that LSA-R.S. 22:1380 B expressly provides that LIGA is not a state instrumentality for any purpose.[2]See Louisiana Insurance Guaranty Association v. Gegenheimer, 93-3021 (La. 4/21/94); 636 So.2d at 210. However, if the legislature had intended to exempt LIGA from the Ethics Code or to enact special provisions applicable only to LIGA, the legislature could have expressly set forth such exemption in LSA-R.S. 22:1380. However, the legislature did not.[3] Moreover, although LIGA is not technically a public body, it is required to have open meetings and keep public records. LSA-R.S. 22:1380 C; Louisiana Insurance Guaranty Association v. Gegenheimer, 93-3021 (La. 4/21/94); 636 So.2d at 210.

2. Powers defined by the legislature.
Additionally, the powers and duties of the association are specifically outlined in LSA-R.S. 22:1382. Because LIGA is a legislative creation, it can operate only within legislative parameters. Louisiana Insurance Guaranty Association v. Gegenheimer, 93-3021 (La. 4/21/94); 636 So.2d at 210. LIGA is not authorized to act in any manner *675 inconsistent with the powers expressly granted to the association in LSA-R.S. 22:1382. The legislature also required that LIGA submit a plan of operation to the Commissioner of Insurance and the Senate and House committees on insurance for oversight. LSA-R.S. 22:1383 A(1). Any plan of operation by LIGA is not effective until approved in writing by the Commissioner of Insurance, and the Senate and House committees on insurance may hold hearings on any plan of operation. LSA-R.S. 22:1383 A(1). Moreover, LIGA is expressly prohibited by statute from implementing any plan of operation rejected by a legislative committee. LSA-R.S. 22:1383 A(1). If LIGA fails to submit a plan of operation, the Commissioner of Insurance is authorized to adopt and promulgate such reasonable rules as are necessary or advisable to effectuate the statutory provisions, subject to review and approval by the Senate Committee on Insurance and the House Committee on Insurance. LSA-R.S. 22:1383 A(2). The required plan of operation covers the procedures for handling assets of the association (LSA-R.S. 22:1383 C(2)); the amount and method of reimbursing the members of the board of directors under LSA-R.S. 22:1381 (LSA-R.S. 22:1383 C(3)); procedures by which claims may be filed with the association and acceptable forms of proof of covered claims (LSA-R.S. 22:1383 C(4)); places and times for meetings of the board of directors (LSA-R.S. 22:1383 C(5)); procedures for record keeping of all financial transactions of the association, its agents, and the board of directors (LSA-R.S. 22:1383 C(6)); procedures for members to appeal association decisions to the commissioner (LSA-R.S. 22:1383 C(7)); and procedures for the selection of the board of directors for submission to the commissioner. (LSA-R.S. 22:1383 C(8)). Further, LSA-R.S. 22:1388 subjects LIGA to examination and regulation by the Commissioner of Insurance.

3. Property of entity belongs to the public.
LIGA obtains its funds from member insurers pursuant to assessments under LSA-R.S. 22:1382 A(3)(a). However, these assessments, which are evidenced by a certificate of contribution, are offset against the member insurer's premium tax liability, not to exceed a total offset of 100%. LSA-R.S. 22:1382 A(3)(c); Louisiana Insurance Guaranty Association v. Gegenheimer, 93-3021 (La. 4/21/94); 636 So.2d at 210. Moreover, any sums acquired by refund under LSA-R.S. 22:1382 B(6) from the association, which were written off by the insurer and offset against premium taxes, but which are not needed to effectuate the purposes of the Louisiana Insurance Guaranty Act, are required to be paid by LIGA to the Commissioner of Insurance and deposited with the state treasury for credit to the general fund of the state. LSA-R.S. 22:1382 A(3)(d).

4. Entity functions for public benefit.
Further, LIGA functions solely and exclusively for public benefit. See Louisiana Insurance Guaranty Association v. Bernard, 393 So.2d at 767. LSA-R.S. 22:1376 sets forth the purpose of the association as follows:
The purpose of this Part is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies and to allow the association to provide financial assistance to member insurers under rehabilitation or liquidation, and to provide an association to assess the cost of such operations among insurers.
Considering the above, we find that, despite any language in LSA-R.S. 22:1380 that LIGA is not a state agency, LIGA is a state or public agency within the contemplation of the Ethics Code. LIGA was created by the legislature, which specifically defined its powers, and is subject to regulation and oversight by the Commissioner of Insurance and the Senate and House committees on insurance. LIGA's property, which is derived from mandatory assessments upon all insurers operating in this state, entitles the member insurers to tax credits, and all remaining funds are transferred into the state general fund. Moreover, LIGA functions are *676 of a public character exclusively and are performed solely for the public benefit. Because LIGA is a state or public agency within the contemplation of the Ethics Code, its board of directors, staff, and contract employees are also subject to the Ethics Code.
In reaching this conclusion, we are guided by the Louisiana Supreme Court's analysis in Polk v. Edwards, 626 So.2d 1128, 1145-47 (La.1993). In Polk, the court examined the Louisiana Economic Development and Gaming Corporation (Casino Corporation). The court held that, despite the specific language in the Casino Act itself stating that the Casino Corporation is not a state agency, except as expressly provided in the act, the Casino Corporation is an instrumentality of the state. The court noted:
After considering its powers and functions, as well as its interrelationship with the state in many areas, we find that the Casino Corporation is an instrumentality of the state and is subject to the provisions of the civil service system. The Casino Corporation does not enjoy an existence separate from the state. It does not independently transact its business and hire its personnel. Furthermore, its actions determine the progress of the gaming industry, which the legislature has designed to assist the growth of tourism and generate revenue as a benefit to the general welfare. To treat this legislative entity as a nongovernmental agency outside of the civil service system would effectively emasculate the constitutional provision, which mandates civil service for "all persons holding offices and positions of trust or employment in the employ of ... any instrumentality" of the state.
Polk v. Edwards, 626 So.2d at 1147. See also City of Baton Rouge, Parish of East Baton Rouge, Donald Nijoka and Roy Hutchinson v. Commission on Ethics for Public Employees (La.App. 1st Cir. 1995); 655 So.2d 457 and Board of Trustees of the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge v. Commission on Ethics for Public Employees (La.App. 1st Cir. 1995); 655 So.2d 1355.
Further, in Louisiana Insurance Guaranty Association v. Gegenheimer, 93-3021 (La. 4/21/94); 636 So.2d at 210, the court was presented with the issue of whether an amendment to LSA-R.S. 13:4521,[4] which exempts state agencies from prepayment of court costs, was unconstitutional. In upholding the constitutionality of the exemption for LIGA, the court noted that, although LIGA is liable for court costs pursuant to LSA-R.S. 22:1382 A(1)(b), LIGA is a legislative creation which operates within legislative parameters. Because the legislature's plenary power is only limited by the Louisiana Constitution, the legislature may give LIGA an exemption generally afforded to state agencies. Louisiana Insurance Guaranty Association v. Gegenheimer, 93-3021 (La. 4/21/94); 636 So.2d at 210.

DECREE
In accordance with the above reasoning, the writ previously issued herein is hereby recalled, and the writ application filed by LIGA is denied. The advisory opinion of the *677 Commission is correct. Costs in the amount of $202.00 are to assessed against the Commission and LIGA equally.
WRIT RECALLED AND APPLICATION DENIED.
NOTES
[1] LIGA requested an opinion as to the following questions:

1. (a) Are none, some, or all of the members of the Board "public employees" within the meaning of the Code (the Board is made up of four appointees and five elected members)?
(b) If "yes" as to some or all of; then would an employee of a member insurer be in violation of the Code by serving on the Board or could such person avoid a conflict by recusing himself/herself when appropriate?
(c) If "yes" as to some or all, then would someone in the insurance agency business in Louisiana be in violation of the Code by serving on the Board or could such person avoid a conflict by recusing himself/herself when appropriate?
(d) If "yes" as to some or all, then would someone in law school who serves on the Board be in violation of the Code if he/she upon finishing school takes a job as an attorney with a law firm representing LIGA?
2. (a) Are LIGA's staff members "public employees" within the meaning of the Code?
(b) If "yes", then what is meant by the term "staff"?
3. (a) Are all persons who contract to provide services to LIGA "public employees" within the meaning of the Code?
(b) If "yes", are there limitations on this with respect to the type of services provided and/or by whom? For example, does this apply to all attorneys, adjusters, mediators, certified public accountants, financial advisors, and all other service providers? Where is the line drawn?
[2] LSA-R.S. 22:1380 B provides as follows:

The association is not and may not be deemed a department, unit, agency, or instrumentality of the state for any purpose. All debts, claims, obligations, and liabilities of the association, whenever incurred, shall be the debts, claims, obligations, and liabilities of the association only and not of the state, its agencies, instrumentalities, officers, or employees. Association monies may not be considered part of the general fund of the state. The state may not budget for or provide general fund appropriations to the association, and the debts, claims, obligations, and liabilities of the association may not be considered to be a debt of the state or a pledge of its credit.
[3] We noted that, since the legislature has not seen fit to exempt LIGA from the provisions of the Ethics Code, it is not necessary to the resolution of the issues presented herein to determine whether the legislature has the constitutional authority to exempt a governmental entity or any public employees from the provisions of the Ethics Code.
[4] LSA-R.S. 13:4521 addresses the exemption of the state and its subdivisions, boards, and commissions from the prepayment of court costs and provides as follows:

A. Except as provided in R.S. 13:5112, R.S. 19:15 and 116, and R.S. 48:451.3, and as hereinafter provided, neither the state, nor any parish, municipality, nor other political subdivision, public board, or commission, nor any officer or employee of any such governmental entity when acting within the scope and authority of such employment or when discharging his official duties shall be required to pay court costs in any judicial proceeding instituted or prosecuted by or against the state, or any such parish, municipality, or other political subdivision, board, or commission, in any court of this state or any municipality of this state, including particularly but not exclusively those courts in the parish of Orleans and the city of New Orleans. This Section shall also apply to the Louisiana Insurance Guaranty Association and the Louisiana Life and Health Insurance Guaranty Association in any judicial proceeding instituted by or against them. This Section shall also apply to employees or agents of the state if they are named as defendants in a suit arising out of the course and scope of their employment or agency. Costs which are temporarily deferred pursuant to this Section cannot be shifted to opposing parties during the pendency of such deferment. (emphasis added.)