655 So.2d 457 (1995)
CITY OF BATON ROUGE, Parish of East Baton Rouge, Donald Nijoka and Roy Hutchinson
v.
COMMISSION ON ETHICS FOR PUBLIC EMPLOYEES.
No. 94 CW 2480.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
*458 Dawn N. Guillot, Baton Rouge, for City of Baton Rouge, Parish of East Baton Rouge, Donald Nijoka and Roy Hutchinson.
R. Gray Sexton, Maris LeBlanc McCrory, Patricia H. Douglas, Baton Rouge, for Com'n on Ethics for Public Employees.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
LOTTINGER, Chief Judge.
We granted supervisory writs in this case to review an advisory opinion of the Commission of Ethics for Public Employees (Commission).

FACTS
The City of Baton Rouge-Parish of East Baton Rouge created an employee retirement system pursuant to its plan of government. The plan of government and city ordinance establishing the retirement system require that certain individuals be appointed or elected to serve as members of the Board of Trustees of the Retirement System (Board). Some of the board members are city-parish employees who participate in the retirement system.
Under the retirement system, members with twenty-five years of service may participate in the Deferred Retirement Option Plan (DROP). Annual interest rates for DROP accounts are set by the Board.
On July 19, 1994, Randy Zinna, attorney for the retirement system, requested an advisory opinion from the Commission regarding whether board members who were also members of the retirement system and eligible for DROP could participate in setting the DROP interest rate. The Commission issued its first advisory opinion on November 2, 1994, indicating that participation by a member of the Board in setting the DROP interest rate *459 would be a violation of La.R.S. 42:1112(A) of the Code of Governmental Ethics.
On November 16, 1994, Mr. Zinna requested clarification of the Commission's opinion. The Commission responded on December 2, 1994. In the second advisory opinion, the Commission restated that board members who are eligible to participate in DROP would be prohibited by La.R.S. 42:1112(A) from participating in setting the interest rate on DROP funds. The Commission further stated that board members who participate in DROP would have to resign if the Board considered such an issue. The setting of the DROP interest rate was scheduled for the December 7, 1994, board meeting. Pursuant to the Commission's advisory opinion, two board members, Donald Nijoka and Roy Hutchinson, resigned.
The City of Baton Rouge, Parish of East Baton Rouge, Donald Nijoka and Roy Hutchinson (hereinafter referred to collectively as the City-Parish) sought supervisory review of the Commission's advisory opinion. In brief, the parties raise the following issues:
1. Whether it is appropriate for this Court to review an advisory opinion rendered by the Commission.
2. Whether an advisory opinion of the Commission supersedes the plan of government for the City-Parish which establishes the retirement system.
3. Whether action by the Board constitutes a "transaction involving the governmental entity" as defined in La.R.S. 42:1102(12) & (23).
4. Whether board members who are eligible for participation in DROP have a "personal substantial economic interest" in fixing the DROP interest rate.

SUPERVISORY REVIEW OF THE COMMISSION'S ADVISORY OPINION
The Commission argues that the City-Parish is premature in its application for supervisory review of the advisory opinion as there is no case or controversy pending between the parties.
The method of appeal of ethics commissions' decisions is statutorily mandated under La.R.S. 42:1142, which states in pertinent part:
A. Appeals to the Court of Appeal, First Circuit. Whenever action is taken against any public servant or person by an ethics body or by an agency head by order of the commission, or whenever any public servant or person is aggrieved by any action taken by an ethics body, he may appeal therefrom to the Court of Appeal, First Circuit, if application to the ethics body is made within thirty days after the decision of the ethics body becomes final. Any preliminary, procedural, or intermediate action or ruling by an ethics body is subject to the supervisory jurisdiction of the appellate court as provided by Article V, Section 10 of the constitution. The Court of Appeal, First Circuit, shall promulgate rules of procedure to be followed in taking and lodging such appeals.
Jurisprudence holds that "an advisory opinion by the Commission is a preliminary or intermediate action or ruling by an ethics body within the meaning of La.R.S. 42:1142." Midboe v. Commission on Ethics for Public Employees, 94-2270, p. 6 (La. 11/30/94); 646 So.2d 351, 355 (citing Board of Commissioners, Fifth Louisiana Levee District v. Commission on Ethics for Public Employees, 484 So.2d 845, 849 (La.App. 1st Cir.), writ denied, 487 So.2d 440 (La.1986)); see also In re Amtext, Inc., 625 So.2d 693, 695 (La.App. 1st Cir.1993). Because the advisory opinion is a preliminary or intermediate action of the Commission, application for supervisory writs is the proper vehicle by which the City-Parish can seek review of the Commission's decision. Thus the City-Parish's application for review was not premature.

PLAN OF GOVERNMENT AND THE ETHICS CODE
The City-Parish contends that an advisory opinion of the Commission cannot supersede its plan of government, which provides for the appointment and election of certain individuals to the Board.
The City of Baton Rouge-Parish of East Baton Rouge is a home rule charter entity in accordance with Louisiana Constitution Article *460 VI, Section 4. The charter grants power to the mayor and council to establish a pension plan and provides for the composition of the Board. In exercising its powers under the charter, the Metropolitan Council adopted an ordinance which further provides for the establishment of the retirement system and the composition of the Board.
The City-Parish contends that because the City-Parish is a home rule charter entity, the plan of government establishing the retirement system and Board overrules the ethics code. The City-Parish refers to Louisiana Constitution Article VI, § 4 which states in pertinent part:

Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted.
(Emphasis added).
The wording of this section emphasizes that home rule charters may not conflict with other provisions of the constitution. Thus, a home rule charter may not conflict with Article X, § 21 of the constitution which provides:
The legislature shall enact a code of ethics for all officials and employees of the state and its political subdivisions. The code shall be administered by one or more boards created by the legislature with qualifications, terms of office, duties, and powers provided by law. Decisions of a board shall be appealable, and the legislature shall provide the method of appeal.
(Emphasis added.)
Pursuant to section 21, the legislature enacted the Code of Governmental Ethics which applies to all public employees, including employees of local governments which may be home rule charter entities. To conclude that the ethics code does not apply to boards created by a home rule charter would result in piecemeal application of the code. The constitutional mandate clearly provides that the ethics code shall apply to all public officials and employees; there is no exception for public officials or employees whose positions arise pursuant to a home rule charter. See Midboe, 646 So.2d at 357. (The supreme court noted that the ethics code applies to all public officials with no exemption for attorneys who are also governed by the Code of Professional Conduct.)
For these reasons, we find that this argument is without merit.

TRANSACTION INVOLVING GOVERNMENTAL ENTITIES
The Commission concluded that board members who are eligible for DROP and who participate in setting the DROP interest rate are in violation of La.R.S. 42:1112(A) of the Code of Governmental Ethics. Section 1112(A) provides that:
No public servant, except as provided in R.S. 42:1120, shall participate in a transaction in which he has a personal substantial economic interest of which he may be reasonably expected to know involving the governmental entity.
The City-Parish contends that actions of the Board do not constitute "transactions involving the governmental entity" as defined in the ethics code and prohibited under section 1112(A). To determine whether the setting of the interest rate is a "transaction involving the governmental entity", we must first determine whether the Board is a governmental entity. Governmental entity is defined in La.R.S. 42:1102(12) as:
the state or any political subdivision which employs the public employee or employed the former public employee or to which the elected official is elected, as the case may be.
Political subdivision is defined in La.R.S. 42:1102(17) as:
any unit of local government, including a special district, authorized by law to perform governmental functions.
The City-Parish contends that the Board is not a governmental entity or political subdivision because the Board does not perform governmental functions and because the funds administered by the Board are not public funds. In support of this proposition, the City-Parish cites Louisiana State Employees' Retirement System v. State, Department *461 of Justice, 423 So.2d 73 (La.App. 1st Cir.1982), writ denied, 427 So.2d 1206 (La. 1983), wherein we held that the funds of the public retirement systems[1] were not public or state funds. In Louisiana State Employees' Retirement System, we did not address the issue of whether a public retirement system is a governmental entity. Our holding in that case does not preclude a finding that the administrative board of this retirement system is a governmental entity. Applying the definition contained in section 1102(17), we find that the Board is a political subdivision performing a governmental function and is therefore a governmental entity within the meaning of the code.
In reaching this conclusion, we are guided by the supreme court's analysis in Polk v. Edwards, 626 So.2d 1128 (La.1993). In Polk, the court examined the Louisiana Economic Development and Gaming Corporation (Casino Corporation). The relevant portion of the case addressed whether the provision of the Casino Act which required that Casino Corporation employees be non-civil servants was constitutional given Article X, Section 1(A) of the Constitution which declares that civil service applies to all employees of the state, as well as to any instrumentality of the state. The specific issue was whether the Casino Corporation was an agency or instrumentality of the state. Id. at 1145.
The court pointed out that the Casino Corporation is owned by the state, advances the interests of the state, carries out a public purpose and is accountable to the state government. Id. at 1146. The court concluded:
After considering its powers and functions, as well as its interrelationship with the state in many areas, we find that the Casino Corporation is an instrumentality of the state and is subject to the provisions of the civil service system. The Casino Corporation does not enjoy an existence separate from the state.
Id. at 1147.
In the present case, the plan of government for the City-Parish authorized the mayor and council to establish, by ordinance, a pension system for all full-time City-Parish employees. The plan also mandated the creation of a board to administer the system and to invest pension funds. The plan further provided that the council appropriate funds, in addition to the employees' contributions, to maintain the system on an actuarially sound basis.
Following the directives contained in the plan of government, the Metropolitan Council created the retirement system and the Board. In 1992, the council enacted ordinance 9426 which amends and re-enacts the code of ordinances relative to the employee retirement system. Ordinance 9426 mandates membership in the retirement system by all regular city-parish employees. Under the ordinance, general administration and responsibility for operation of the retirement system is vested in the Board. The ordinance also specifies the rules under which the Board operates and the provisions which the Board must enforce.
The Board was created by ordinance in accordance with the City-Parish plan of government. The sole purpose of the Board is to administer the City-Parish retirement system. In administering the system, the Board enforces and makes effective the provisions established by the Metropolitan Council. Furthermore, the Board is accountable to the council through mandatory annual audit reports. Considering these factors, we conclude that the Board is a political subdivision of the City-Parish government whose sole governmental function is to administer the employee retirement system. It follows that the Board is a "governmental entity" within the meaning of the Code of Governmental Ethics.
Having determined that the Board is a governmental entity, we next determine whether the setting of the DROP interest rate is a "transaction involving the governmental entity". La.R.S. 42:1102(23) defines "transaction involving the governmental entity" as: *462 any proceeding, application, submission, request for a ruling or other determination, contract, claim, case, or other such particular matter which the public servant or former public servant of the governmental entity in question knows or should know:
(a) Is, or will be, the subject of action by the governmental entity.
(b) Is one to which the governmental entity is or will be a party.
(c) Is one in which the governmental entity has a direct interest. A transaction involving the agency of a governmental entity shall have the same meaning with respect to the agency.
The setting of the DROP interest rate is a "determination" or "other such particular matter" which will be the subject of action by the governmental entity (board of trustees) and in which the governmental entity (board of trustees) has a direct interest. Thus, we conclude that the setting of the DROP interest rate is a "transaction involving the governmental entity" as defined in the Code of Governmental Ethics.

PERSONAL SUBSTANTIAL ECONOMIC INTEREST
To violate section 1112(A) of the ethics code, public servants must have a "personal substantial economic interest" in the transaction. The City-Parish contends that a board member who is eligible for participation in DROP does not have a "personal substantial economic interest" in fixing the DROP interest rate.
La.R.S. 42:1102(21) defines "substantial economic interest" as:
an economic interest which is of greater benefit to the public servant or other person than to a general class or group of persons, except:
(a) The interest that the public servant has in his position, office, rank, salary, per diem, or other matter arising solely from his public employment or office.
(b) The interest that a person has as a member of the general public.
According to the City-Parish, individual board members gain no advantage in setting the interest rate because any benefit which board members derive from setting the rate is identical to the other 550-600 DROP participants' benefits. While the Commission agrees with this statement, it notes that the interest that DROP participants have in setting the rate is greater than that of the approximately 3,700 participants in the retirement system. According to the Commission, the only "general class" that should be considered in this case is the class of all persons who are members of the retirement system. We agree that the "general class" at issue in this case is the class of persons belonging to the retirement system rather than the significantly smaller group of employees participating in the DROP program. The Board is charged with investing and protecting the interests of all retirement system members. An improvidently set interest rate on DROP funds could adversely impact the entire system. Clearly, board members who participate in DROP have an economic interest which is of greater benefit to themselves than to the general class of retirement system members.
The City-Parish also contends that the benefit of participation in the DROP program stems solely from the board member's public employment with the City-Parish and is therefore subject to the exemption in subsection (a).
As pointed out by the Commission, this argument misapplies the exception. The exception in section 1102(21)(a) for the interest that a public servant has in his public employment, in this situation, relates to the interest that the board member has in his position as a member of the Board. For example, a board member may participate in setting the rate for reimbursement of expenses to be paid to board members. However, the exception does not extend to an interest in another position of public employment held by the board member. Thus, the exception does not encompass the board member's interest in the DROP program which arises from a separate position of public employment.
For these reasons, we conclude that board members participating in DROP have a substantial *463 economic interest in setting DROP interest rates.

CONCLUSION
For the foregoing reasons, we hold that the City-Parish was not premature in seeking a supervisory writ. We also hold that although the Board was created pursuant to a home rule charter, board members are subject to the Code of Governmental Ethics. Additionally, we hold that the Board is a governmental entity and that the setting of the DROP interest rate is a transaction involving a governmental entity within the meaning of the Code of Governmental Ethics. Furthermore, we find that board members have a substantial economic interest in setting the DROP interest rate.
Accordingly, we find no error with the decision of the Commission of Ethics for Public Employees finding that La.R.S. 42:1112(A) prohibits board members, who are eligible to participate in DROP, from setting the DROP interest rate. Therefore, the writ is recalled, and the application is denied. Costs of this appeal are assessed against City-Parish in the amount of $354.00.
WRIT RECALLED AND APPLICATION DENIED.
NOTES
[1] The retirement systems included the Louisiana State Employees' Retirement System, Teachers' Retirement System of Louisiana, Louisiana School Employees' Retirement System, and the Louisiana School Lunch Employees' Retirement System.