Dear Mr. Ashworth:
You requested the opinion of this office concerning several questions pertaining to the Research Park Corporation (the "Corporation"). Since the date of your original request, certain things have changed which obviate the need for an answer to all but the following question:
 Whether the Louisiana Technology Park, L.L.C., a wholly owned subsidiary of the Research Park Corporation, is an "agency, board, commission, or instrumentality" of the State of Louisiana, for purposes of La.R.S. 47:301 — 322.42, such that it is excluded from the definition of a taxable person liable for state and parish sales and use taxes in accordance with La.R.S. 47:301(8)?
R.S. 47:301(8) defines "person" to mean, in pertinent part:
 (8)(a) "Person", except as provided in Subparagraph (c), includes any individual, firm, copartnership, joint adventure, association, corporation, estate, trust, business trust, receiver, syndicate, this state, any parish, city and parish, municipality, district or other political subdivision thereof or any board, agency, instrumentality, or other group or combination acting as a unit, and the plural as well as the singular number.
* * *
 (c) For purposes of the payment of the state sales and use tax and the sales and use tax levied by any political subdivision, "person" shall not include this state, any parish, city and parish, municipality, district, or other political subdivision thereof, or any agency, board, commission, or instrumentality of this state or its political subdivisions. . . (Emphasis added)
In order to determine whether the Louisiana Technology Park, L.L.C. (the "Park LLC") is excluded from the definition of a taxable person, we must first determine whether the Corporation is excluded from the definition of a taxable person.
To be excluded from the payment of state and local taxes, the Corporation must constitute an agency, board, commission or instrumentality of this state or its political subdivisions. The Corporation is created pursuant to La.R.S. 17:3396, et seq. as a public, nonprofit corporation authorized to create, develop, construct, operate, manage, and finance a research and development park in cooperation with the Board of Supervisors of LSU, the Board of Supervisors of Southern University, and the governing authority of the appropriate municipality or parish. La.R.S. 17:3396.
We are cognizant of the fact that R.S. 17:3396.2 specifically declares that the Corporation shall not constitute an instrumentality of the state, a state agency, board, or commission, or a political subdivision, even though R.S. 17:3396 and 3396.1 declare the corporation public. As a result of these conflicting provisions, the Corporation Act appears ambiguous on this point. The Louisiana Civil Code provides, "When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La.Civ. Code Art. 12.
In several instances our courts have evaluated an entity based upon factors regarding the substance of the entity, rather than relying on a statement by the legislature categorizing the nature of the entity as non-public. For example, in Polk v. Edwards, 626 So.2d 1128, 1146 (La. 1993) the Supreme Court adopted the trial court's finding that the Casino Corporation was an "agency, board, commission or instrumentality" of the state, notwithstanding a contrary characterization found within the Casino Act which had created the Casino Corporation. In Polk, the court considered the Casino Corporation's powers and functions, as well as its interrelationship with the state, to determine that the Casino Corporation was an instrumentality of the state.
In Louisiana Public Facilities Authority v. Foster, 2001-0009 (La. 9/18/01), 795 So.2d 288, the Louisiana Supreme Court found that the LPFA, a public corporation, as defined by statute and created for a diversity of public purposes, could not be deemed a private citizen and that the LPFA is a public entity, subject to legislative regulation.
Likewise, in Louisiana Insurance Guaranty Association v. Commission onEthics for Public Employees, 95 0021 (La.App. 1 Cir. 5/5/95),656 So.2d 670, the Court determined that the Louisiana Insurance Guaranty Association was a governmental entity for purposes of the Ethics Code, even though it is statutorily described as a private non-profit unincorporated legal entity. R.S. 22:1380(A). The court, relying uponState v. Smith, 357 So.2d 505, 507 (La. 1978) listed the following factors that are to be considered in finding an entity to be a state or public agency or in finding an individual to be a state or public officer:
(1) the entity was created by the legislature;
 (2) the powers were specifically defined by the legislature;
(3) the property of the entity belonged to the public; and
 (4) the entity's functions were exclusively of a public character and performed solely for the public benefit.
Considering the first factor, the Corporation was created by the legislature. R.S. 17:3396, et seq. As to the second factor, its functions are specifically defined by the legislature in R.S. 17:3396.5, as follows:
 In addition to the powers granted it by the Nonprofit Corporation Law, as provided in Chapter 2 of Title 12 of the Louisiana Revised Statutes of 1950, the corporation shall have the following powers and authorities:
 (1) To acquire, purchase, hold, use, improve, lease, mortgage, sell, transfer, and dispose of any property, real, personal, or mixed, or any interest therein.
 (2) To receive and accept from any agency of the United States or any agency of the state of Louisiana or any municipality, parish, or other political subdivision thereof, or from any individual, association, or corporation, gifts, grants, or donations of monies or other property for achieving any of the purposes of this Part, and to invest and disperse funds of the corporation.
 (3) To create, develop, construct, operate, manage, and finance research and development parks, related facilities, and infrastructure.
 (4) To receive and accept from any source loans, contributions, or grants for or in aid of any purpose of the corporation, or the financing thereof in either money, property, labor, or other things of value.
(5) From time to time to borrow money and incur debt.
 (6) To make bylaws for the management and regulation of its affairs.
 (7) To make and enter into contracts and to execute all instruments necessary or convenient for the carrying out of business.
 (8) To make and enter into cooperative endeavor agreements with the United States, or its agencies, or with any public or private association, corporation, or individual.
 (9) To delegate authority to any agent or establish any committee in order to accomplish the purposes of the corporation.
 (10) To mortgage, pledge, hypothecate, or otherwise encumber the property, real, personal, or mixed, or facilities, or revenues of the corporation as security for notes, evidences of indebtedness, or other obligations of the corporation and to assign or pledge all or any portion of its interest in property, corporeal or incorporeal, and the revenues therefrom.
 (11) To maintain an inventory of research efforts in Louisiana.
 (12) To attract investments in research and development and high technology industries by focusing attention on various educational, cultural, scientific, and economic activities in Louisiana and by assisting potential investors with information requested to determine whether to invest in Louisiana.
 (13) To hire an executive director or president, who shall be an employee of the corporation, to manage the day-to-day affairs of the corporation.
Regarding ownership of the property, the Corporation is given specific authority to acquire, purchase, hold, use, lease, mortgage, sell and dispose of any property, real, personal, or mixed. R.S. 17:3396.5. As the Corporation is public in nature, its property is, in fact, publicly owned. Furthermore, upon dissolution of the Corporation, all funds, property, assets will become owned by and inure to the benefit of the State. R.S. 17:3396.9.
The fourth factor is the public benefit and public purpose involved. In R.S. 17:3396 the Legislature authorized the establishment of the Research Park Corporation, " as a public, nonprofit corporation in order that it might, create, develop, construct, operate, manage, and finance a research and development park and in doing so promote economic development and foster better employment opportunities within Louisiana. In R.S. 17:3396.3 (B), the Legislature enumerated the following purpose and functions of the Research Park Corporation:
 (1) To promote the development of high technology industries and research in Louisiana.
 (2) To create, develop, construct, operate, manage, and finance research and development parks.
 (3) To increase opportunities for employment in Louisiana.
(4) To promote research and development in Louisiana.
 (5) To promote cooperation between the public and the private sector with respect to research and development.
 (6) To promote and assist institutions of higher education under the management of the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College and the Board of Supervisors of Southern University and Agricultural and Mechanical College in the field of research and development.
 (7) To promote and assist the governing authority of the appropriate municipality or parish to encourage research and development, to increase opportunities for employment, and to attract high technology industries in such area.
 (8) To attract nationally prominent scientists and researchers to the appropriate municipality or parish, to Louisiana, and to Louisiana State University and Agricultural and Mechanical College and Southern University and Agricultural and Mechanical College.
(9) To maximize the research capabilities of the state."
These stated purposes express the Legislature's clear intention that the Corporation create research development parks throughout the state and operate them so as to foster research opportunities for the mutual benefit of our state universities, private researchers and the Louisiana work force. As such, they demonstrate a clear legislative intent that the Corporation's purpose is a public one. Additional evidence of this intent is found in La.R.S. 47:302.29 which dedicates a portion of all hotel occupancy taxes and admission to amusements taxes collected in East Baton Rouge Parish to the Corporation's development of a research and development park within East Baton Rouge Parish.
Another factor often enumerated in the determination that an entity is an "agency, board, commission or instrumentality" of the state, is whether the entity is subject to public control and oversight. AudubonPark Commission v. Board of Commissioners for the Port of New Orleans,153 So.2d 574 (La.App. 4th Cir. 1963). That the Research Park Corporation is subject to public control is evidenced by La.R.S. 17:3396.4 which places management of the Research Park Corporation in the hands of a board of directors whose membership consists of:
 (1) The mayor-president of the city of Baton Rouge and the parish of East Baton Rouge.
 (2) The president of the Louisiana State University system.
 (3) The chancellor of Louisiana State University and Agricultural and Mechanical College at Baton Rouge.
 (4) The chancellor of Louisiana State University Agricultural Center.
(5) The president of the Southern University System.
 (6) The chancellor of Southern University and Agricultural and Mechanical College at Baton Rouge.
 (7) The vice chancellor for research and economic development of Louisiana State University and Agricultural and Mechanical College at Baton Rouge.
 (8) The president pro tempore of the Metropolitan Council of the parish of East Baton Rouge and the city of Baton Rouge.
 (9) The president of the Greater Baton Rouge Chamber of Commerce.
 (10) The chairman of the Louisiana Public Facilities Authority.
(11) The president of the Baton Rouge Area Foundation.
 (12) The secretary of the Department of Economic Development.
 (13) In addition, the board members designated in Paragraphs (1) through (12) of this Subsection shall elect seven individuals to represent the business sector to serve on the board of directors. Three of the individuals shall be minorities representing the minority business sector. One of the three minority business sector board members shall be appointed from nominees submitted by the Economic Freedom Association, and one shall be appointed from nominees submitted by the Realtists of Baton Rouge.
Thus, majority control of the Corporation is placed into the hands of ten public officials, while the balance of the board is composed of representatives of the business sector, two of whom are enumerated in 9 and 11 above and seven of whom are picked by the enumerated directors, a majority of whom are public officials.
As a public entity, the Corporation is also subject to many other checks which ensure that the business it conducts is limited to its stated public purpose. For instance, the Corporation's statement of purpose and function requires the Corporation to coordinate its activity with local officials. La.R.S. 17:3396.3(7). Also, the Corporation must comply with the Public Records Law, the Open Meetings Law, and the Code of Governmental Ethics. La.R.S. 3396.8. As a public entity, the Corporation is subject to the public bid laws. Further indicia of public control is found in the Legislature's statement that upon dissolution of the Research Park Corporation, all property of the Research Park Corporation, . . . shall become owned by and shall inure to the benefit of the state La.R.S. 17:3396.9. Thus, while the Corporation is funded by both private and public funds, the Corporation is a public entity subject to the laws affecting public bodies and its property must be used by the Corporation within its narrowly defined public purpose or should the Corporation dissolve, this property may be used by the state for such other public purpose as the legislature shall designate.
Based upon the foregoing, it is the opinion of this office that the Corporation is, despite the language of R.S. 17:3396.2, a state agency, board, commission or instrumentality of the State, and as such, does not constitute a "person" for purposes of R.S. 47:301(8).
The Corporation established the Park L.L.C. to create, develop, construct, operate, manage and finance the Baton Rouge research and development park on behalf of the Corporation. It is axiomatic that a public entity cannot create an entity to perform its functions yet remove it from the duties and responsibilities incumbent upon a public entity.
The Park LLC is subject to public control as it's ownership and management are vested in the Corporation, the sole member and the sole manager of this limited liability company. Consequently, all actions of the Park LLC are subject to public control and review through the Corporation. Specifically, all decisions made by the Park LLC's manager, the Corporation, are subject to the laws affecting governmental entities, including but not limited to the Public Records Law, the Open Meetings Law, and the Code of Governmental Ethics. La.R.S. 17:3396.8. The Park LLC would also be subject to the public bid laws. Additionally, its manager, the Corporation, will be required to make these decisions in conjunction with local governing bodies. Finally, should the Park LLC be dissolved at any time, its assets will be assumed by its sole owner, the Corporation.
Even when subject to public control by a single state agency or instrumentality, an entity may not be an "agency, board, commission or instrumentality" of the state if it has been created for the purpose of accomplishing ultra vires acts on behalf of its parent. Audubon ParkCommission at 579. We are not aware of any evidence suggesting the Corporation had such an intent when creating the Park LLC or that the Corporation has ever undertaken any ultra vires act through the Park LLC.
Accordingly, it is the opinion of this office that the Park LLC should be classified as an "agency, board, commission or instrumentality" of the state.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ________________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH