IüHILLARY J. CRAIN, Judge Pro Tem.
We granted this writ of certiorari to review an advisory opinion of the Louisiana Commission on Ethics for Public Employees (Commission).

FACTS

The facts are not at issue.
Mr. C.C. Dabadie served as President of Guaranty Bank and Trust Company Inc. (Guaranty Bank), which is located in Baton Rouge, and as a member and Secretary-Treasurer of the Board of Trustees of the Louisiana Public Facilities Authority (LPFA) since July, 1985. We glean from the record that the LPFA is a public trust created pursuant to La.R.S. 9:2341-2347, which provides for the creation of public trusts for authorized public functions or purposes. The trusts may issue obligations' and provide funds for the furtherance and accomplishment of any authorized public function or purpose. La.R.S. 9:2341. The LPFA issued bonds for an improvement project of the St. Francis Medical Center. At the request of St. Francis Medical Center, First American Bank & Trust of Louisiana (First American) of Monroe was appointed trustee. The trust department of First American is paid a substantial fee by St. Francis Medical Center for performing trustee duties. Mr. Dabadie served on the Board of Trustees of the LPFA during the time that First American was appointed and began serving as trustee, on approximately January 1, 1994. Further, the trustee relationship between St. Francis and First American will remain in effect until the indebtedness represented by the bonds is paid.
On May 31, 1994, Guaranty Bank was acquired by Regions Financial Corporation (Regions) and became a wholly owned subsidiary of Regions. Regions is a Delaware holding company which owns subsidiaries in several states, namely Alabama, Florida, Georgia and Tennessee. In separate transactions, Regions also acquired Secor Bank of New Orleans (Secor Bank) and the Bank of New Roads which existed as wholly owned subsidiaries of Regions. Regions planned to acquire First American, effective November 10, 1994, and First American was to continue operating as a wholly |3owned subsidiary of Regions. Effective December 2, 1994, Regions Bank of Louisiana (Regions Louisiana) was to be chartered as another wholly owned subsidiary of Regions. Also effective December 2, 1994, Secor Bank, Guaranty Bank and First American were going to merge into Regions Louisiana. Mr. Dabadie was to be appointed President of Regions Louisiana and also appointed to the Board of Directors of Regions Louisiana. This would result in Regions Louisiana being the trustee of St. Francis Medical Center project. Mr. Daba-die had apparently been consulting with the Commission for several months regarding these impending changes.
By letter dated November 9,1994, directed to the Commission, Mr. Dabadie requested an advisory opinion regarding various potential transactions between Regions Louisiana and the LPFA should Mr. Dabadie remain on the LPFA Board while holding the position of President of Regions Louisiana and being a member of the Board of Directors of Regions Louisiana. He also requested an opinion of his status and that of Regions Louisiana should he resign his position on the LPFA.
The Commission met on November 30, 1994, to consider Mr. Dabadie’s request for an advisory opinion. Mr. Dabadie attended the meeting. Advisory opinion No. 94-296 was issued by the Commission on December 1,1994.
In answer to the questions proposed by Mr. Dabadie, based on the possibility of Mr. Dabadie resigning his board membership from the LPFA and his continuation as President and Member of the Board of Directors of Regions Louisiana, the Commission determined:
*826 “that for two years after your resignation from the LPFA you would be prohibited from assisting any Regions Louisiana Bank in transactions involving the LPFA and it was the presumption of the Commission that as President of Regions Louisiana you would necessarily assist the Louisiana banks in all such transactions. The Commission further concluded that it would presume that you would not be assisting Regions banks outside Louisiana and that those banks would therefore not be prohibited from conducting business with the LPFA.”
On December 2, 1994, a supplementary advisory opinion to opinion No. 94-296 was issued by the Commission in order to clarify anj^issue not specifically addressed in the advisory opinion issued the previous day. The opinion of December 2, 1994, read in part as follows:
“In response to your questions dealing with the possibility of you resigning as a member of the Louisiana Public Facilities Authority (“LPFA”) board, the Commission concluded that for two years after your resignation - from the LPFA you would be prohibited from assisting any Regions Louisiana Bank in transactions involving the LPFA. And, given the presumption of the Commission that as President of Regions Louisiana you would necessarily assist the Louisiana banks in all such transactions, the effect of this conclusion would be that Regions Louisiana banks would be prohibited from transacting business with the LPFA during that two year period.
You then asked about the impact of this decision on the existing relationship held by the Monroe Regions Bank as a trustee on an LPFA bond issue benefiting St. Francis Medical Center. The Commission replied that, in order to avoid a violation of the post employment restriction in the Ethics Code, this trustee relationship would have to be terminated.”
Regions Louisiana and Mr. Dabadie filed this supervisory writ application raising the following issues: (1) “Did the Commission, in its advisory opinions, erroneously interpret Section 1121(A), and in so doing invoke a presumption unwarranted by the Ethics Code and Louisiana law?” and (2) “Did the Commission, in its December 2nd advisory opinion, improperly find that Regions-Monroe should terminate its preexisting trustee relationship with St. Francis Medical Center?” We granted supervisory writs to consider the issues raised.

PRESUMPTION OF ASSISTANCE IN TRANSACTIONS BEFORE THE LPFA

It is uncontradicted that, as an appointed board member of the LPFA, Mr. Dabadie is subject to the Ethics Code. Upon resignation from the board, he is subject to the restrictions of La.R.S. 42:1121(A), which provides in part: “No former agency head ... shall, for a period of two years following the termination of his public service as the head of such agency ... assist another person, for compensation, in a transaction, or in an appearance in connection with a transaction, involving that agency.” The term “agency head” includes any member of a board or commission who |sexercises supervision over the agency. La.R.S. 42:1102(3). “Assist” is defined as acting “in such a way as to help, advise, furnish information to, or aid a person with the intent to assist such person.” La.R.S. 42:1102(4). Thus, the former board member must have the intent to assist another person or entity in a transaction or an appearance in connection with a transaction involving the agency or board with which the former member was associated.
The purpose of the Ethics Code is to ensure a high ethical standard for present and former public servants by implementing legislative policies and objectives as stated in La.R.S. 42:1101(B):
“It is essential to the proper operation of democratic government that elected officials and public employees be independent and impartial; that governmental decisions and policy be made in the proper channel of the governmental structure; that public office and employment not be used for private gain other than the remuneration provided by law; and that there be public confidence in the integrity of government. The attainment of one or more of these *827 ends is impaired when a conflict exists between the private interests of an elected official or a public employee and his duties as such. The public interest, therefore, requires that the law protect against such conflicts of interest and that it establish appropriate ethical standards with respect to the conduct of elected officials and public employees without creating unnecessary barriers to public service. It is the purpose of this Chapter to implement these policies and objectives.”
Section 1121 of the Ethics Code was enacted to prohibit a “revolving door” of successive government and private employment. Midboe v. Commission on Ethics for Public Employees, 94-2270 (La. 11/30/94); 646 So.2d 351.
The Commission has given an expansive interpretation of the Ethics Code by the creation of a presumption that, as President of Regions Louisiana, Mr. Dabadie would necessarily assist Regions Louisiana in all transactions before the LPFA. This expansive interpretation of the Ethics Code by the creation of a presumption of assistance goes far beyond the literal language of the Ethics Code and reads out the intent requirement of La.R.S. 42:1102(4). This was done despite the protestations of Mr. Dabadie that he 16would be insulated from the operations of the former First American Bank or Regions Louisiana trust department and that he would not assist Regions Louisiana in any transactions before the LPFA. It was uncontested that the possibility of an occurrence whereby Regions Louisiana would have to come before the LPFA as trustee of the St. Francis Medical Center project was remote. The Commission presumed a real and substantial conflict of interest which precluded it from finding only a remote possibility of a conflict of interest. This interpretation is unwarranted and incorrect. See Hill v. Commission on Ethics for Public Employees, 453 So.2d 558 (La.1984). Additionally, there was no hearing conducted prior to the rendition of the advisory opinion which categorically presumed the “assistance” of a bank president in all transactions conducted before the LPFA. This should be done on a ease by case basis. See In re Amtext, Inc., 625 So.2d 693 (La.App. 1st Cir.1993).

TERMINATION OF TRUSTEE RELATIONSHIP

The Commission concluded that the trustee relationship between First American (or after the merger of December 2, 1994, of Louisiana Regions) and St. Francis Medical Center must be terminated in order to avoid a violation of Section 1121(C) of the Ethics Code, which provides as follows:
“No legal entity in which a former public servant is an officer, director, trustee, partner, or employee shall, for a period of two years following the termination of his public service, assist another person, for compensation, in a transaction, or in an appearance in connection with a transaction in which such public servant at any time participated during his public service and involving the agency by which he was formerly employed or in which he formerly held office.”
The termination of the trustee relationship required by the Commission amounts to the rescission of an action of a governmental entity which is governed by section 1152 of the Ethics Code. Pursuant to section 1152, the Commission may cancel or rescind any contract, permit or license issued by a governmental entity where a violation of the Ethics Code has influenced the issuing of the permit, license or the making of the contract. La.R.S. 742:1152(A)(1). Pursuant to 1152(A)(2), if there is no violation of the Ethics Code in making the contract or issuing the permit, but “[t]he ethics body finds under all of the circumstances that the interests of the governmental entity so require,” the contract or action of the entity may be rescinded. However, the “rescission is to be limited so as to not adversely affect the interests of innocent third parties.”
It is uncontested that the trustee relationship was entered in good faith, and at the time of its confection, Mr. Dabadie was not in any way associated with First American. Thus, La.R.S. 42:1152(A)(1) is not applicable. If the Commission should find that, under all the circumstances, the interests of the LPFA require rescission or termination of the trustee relationship, the interests of *828 St. Francis Medical Center as an innocent third party must not be adversely affected. The Commission’s determination that First Bank or Louisiana Regions must resign its trusteeship gave no consideration to any potential adverse impact to the St. Francis Medical Center project, nor did the Commission make a finding that under the facts and circumstances of this case, the interests of the LPFA require termination of the trustee relationship. Consequently, the advisory opinion does not comport -with the requirements of La.R.S. 42:1152(A)(1) or (A)(2).

DECREE

For the above reasons, we exercise our supervisory jurisdiction, grant the writ application and vacate and set aside Advisory Opinion No. 94-296 and its supplement. Costs of this proceeding in the amount of $184.75 are assessed against respondent Commission.