laTANNER, Judge Pro Tern.
This case comes before us on an application for supervisory writs filed by Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (LSU Board of Supervisors), under our authority set forth in Article V, Section 10 of the Constitution of 1974 and under La.R.S. 42:1142(A). La.R.S. 42:1142(A) provides that any preliminary, procedural, or intermediate action by an ethics body is subject to the supervisory jurisdiction of this court.
LSU Board of Supervisors seeks review of an advisory opinion rendered on July 27, 1996, by the Commission on Ethics for Public Employees (the Commission) at the LSU Board of Supervisors’ request. Because we agree with the Commission that insufficient evidence was presented to the Commission to *595 make an adequate record for determination, we remand and instruct the Commission to hold a hearing on the matter.
FACTS
LSU Board of Supervisors initially requested, on February 14, 1995, an advisory opinion from the Commission concerning a proposed transaction between members of the LSU Medical School faculty in New Orleans and a private non-profit medical practice corporation, yet to be formed, for the provision of medical services. The non-profit medical practice corporation would be managed by a board of directors, composed of seven members who would be neither LSU employees nor members of the Board of Supervisors, the Chancellor of the LSU Medical Center, the Dean of the LSU School of Medicine in New Orleans, two faculty department heads named by LSU, a medical school faculty member named by LSU, and a medical school member named by LSU and selected from the ranks of those physicians holding credentials as primary care physicians.
The new corporation would employ members of the LSU Medical Center faculty for the practice of medicine. These faculty members would continue to earn a base salary from the University for teaching, research, and “possibly some limited clinical functions.” However, these physicians would no longer perform a clinical practice function for the University and they would not be paid for such a function. They would seek yearly ^approval from LSU to work for the new corporation, which would not be a public servant or public employee for purposes of the Code of Governmental Ethics.
LSU Board of Supervisors’ request for an advisory opinion on whether the proposed transaction was violative of the Code of Governmental Ethics, La.R.S. 42:1101 through 1169, was considered at the Commission’s meeting on February 16 and deferred until March 30, 1995, for reconsideration. On March 31,1995, the Commission met. Counsel for LSU appeared at the meeting. The matter was again taken under advisement until April 27,1995.
At that meeting, counsel for LSU and representatives of the LSU Medical Center appeared and gave further information to the Commission. The LSU Board of Supervisors, at its April 21 meeting, had authorized LSU’s president to grant approval for outside employment for the Medical School faculty members. In an April 25,1995 letter to the Commission, counsel for LSU Board of Supervisors notified the Commission of the Board of Supervisors’ authorization. The letter’ further explained that the new corporation’s Board of Directors would be composed of eight rather than seven members employed neither by LSU nor by the LSU Board of Supervisors, with an additional seven members.
At the April 27 meeting of the Commission, members expressed concern that the proposed transaction with the new corporation would effectively privatize the clinical practice function of the Medical Center. They recommended that LSU Board of Supervisors pursue legislation in the upcoming legislative session to authorize such a course of action. The matter was rescheduled for consideration during the May 31, 1995 meeting but was deferred again, apparently at the request of LSU Board of Supervisors.
The matter was finally heard by the Commission on July 12, 1995, and was taken under advisement. Later that day the Commission returned to general business to consider information provided in connection with the request. It concluded that provisions of the Code of Governmental Ethics would prohibit the described contractual arrangements for the provision of clinical services by members of the LSU Medical School faculty. One member dissented and one member re-cused himself from voting.
UTHE COMMISSION’S ADVISORY OPINION
The Commission noted that it was not provided with a copy of the proposed contract between the new corporation and the Medical Center and therefore “can only speculate as to the exact nature of the envisioned relationship.” It found that La.R.S. 42:llll(C)(l)(a) and (2)(d) proscribe the rendering of the described services to the hypothetical corporation, and that La.R.S. *596 42:1113(A) would also prohibit the employees of the Medical Center from performing the described services “through the vehicle of the envisioned corporation to the Medical Center.” It considered but rejected LSU Board of Supervisors’ argument that the exception provided in La.R.S. 42:1123(9)(b) applied.
La.R.S. 42:llll(C)(l)(a) and (2)(d) provide as follows:
C. Payments for nonpublic service.
(1) No public servant shall receive any thing of economic value for any service, the subject matter of which:
(a) Is devoted substantially to the responsibilities, programs, or operations of the agency of the public servant and in which the public servant has participated; or
* * * * * *
(2) No public servant and no legal entity in which the public servant exercises control or owns an interest in excess of twenty-five percent, shall receive any thing of economic value for or in consideration of services rendered, or to be rendered, to or for any person during his public service unless such services are:
* * * * * *
(d) Neither performed for nor compensated by any person from whom such public servant would be prohibited by R.S. 42:1115(A)(1) or (B) from receiving a gift.
La.R.S. 42:1115(A)(1) and (B) further provide:
Section 1115. Gifts
A. No public servant shall solicit or accept, directly or indirectly, any thing of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public servant knows or reasonably should know that such person:
(1) Has or is seeking to obtain contractual or other business or financial relationships with the public servant’s agency, or
* * * * * *
B. No public employee shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director, agent, or employee of such person, if such public employee knows or reasonably should knowlsthat such person:
(1) Conducts operations or activities which are regulated by the public employee’s agency.
(2) Has substantial economic interests which may be substantially affected by the performance or nonperformance of the public employee’s official duty.
Board of Supervisors argued that the exception to the above provisions found in La. R.S. 42:1123(9)(b) applied to the proposed transaction. La.R.S. 42:1123(9)(b) reads as follows:
The performance of services for compensation for any person, by faculty or staff members of a public higher education institution, provided the services consist of consulting related to the academic discipline or expertise of said public employee and provided the services have been approved in writing by the chief administrative officer of the public employee’s institution in accordance with rules and procedures established by the management board of the institution, which rules and procedures have been approved by the Board of Regents and the Commission on Ethics for Public Employees.
LSU Board of Supervisors argues that the Commission erred in its determination that LSU Medical School faculty could not contract in their private capacities with a private non-profit corporation for the practice of medicine. The Commission responds by raising two procedural issues: first, whether LSU has standing to judicially challenge a Commission advisory opinion; second, whether this court should review an advisory opinion of the Commission through an application for supervisory writs.
Because of our resolution of the matter on procedural grounds, we do not reach LSU Board of Supervisors’ arguments on the merits of the Commission’s ruling. We will address the Commission’s procedural arguments.
*597 STANDING
The Commission argues that LSU, because it is a “governmental entity” for purposes of the Code of Governmental Ethics, is not subject to the authority of the Commission, which only extends to “public employees.” Therefore, only the individual physicians, not LSU Board of Supervisors, would have standing to seek an advisory opinion.
In State Mineral Board v. Louisiana Commission on Governmental Ethics, 367 So.2d 1188 (La.App. 1st Cir.1978), writ den. 368 So.2d 1097 (La.1978), the Mineral | eBoard filed a petition for declaratory judgment and an injunction against a hearing proposed to be held by the Governmental Ethics Commission. In that case, we held that the Commission had no authority to discipline the Mineral Board as an entity. The investigation at issue concerned individual members of the Board, not the Mineral Board itself. Therefore, the Mineral Board had no cause of action for declaratory judgment against the Commission.
In Board of Commissioners of the Port of New Orleans v. Louisiana Commission on Ethics for Public Employees, 416 So.2d 231 (La.App. 1st Cir.1982), unit den. 421 So.2d 248 (La.1982), the Dock Board sought declaratory judgment and injunctive relief against the Commission to stop the Commission from conducting private investigations of the Dock Board’s business affairs. The Commission filed an exception of no right of action, which was sustained by the trial court. We found that the trial court’s action in sustaining the exception was premature and reversed it. However, we stated that if rulings of the Ethics Commission made it impossible for a political subdivision to obtain members with required statutory qualifications, the political subdivision might have a right of action to contest such a ruling.
Because the instant case is before us on supervisory review of an advisory opinion, we find it distinguishable from both State Mineral Board and Board of Commissioners of the Port of New Orleans. LSU Board of Supervisors is not seeking a declaratory judgment holding that an action taken by the Ethics Commission is wrong, nor is it asking for injunctive relief. It is merely seeking review of an intermediate action or ruling by an ethics body, under R.S. 42:1142(A). See Board of Commissioners, Fifth Louisiana Levee District v. Commission on Ethics for Public Employees, 484 So.2d 845 (La.App. 1st Cir.), writ den., 487 So.2d 440 (La.1986).
In this posture, the Commission cannot raise lack of standing for LSU to seek review of an advisory opinion on behalf of its employees. The initial request for an advisory opinion from the Commission came from “members of the LSU Medical School faculty in New Orleans.” Clearly, the advisory opinion affects the public employees of |7the governmental entity directly. LSU Board of Supervisors has not asked for advice on what it as an entity can do, but rather what the medical school faculty can do. See Louisiana Insurance Guaranty Association v. Commission on Ethics for Public Employees, 95-0021 (La.App. 1st Cir. 5/5/95); 656 So.2d 670, in which we reviewed a case in which LIGA had asked for an advisory opinion on whether its board of directors, staff, and contract employees were “public employees.” We find this argument has no merit.
REVIEW OF ADVISORY OPINIONS BY THIS COURT
In Board of Commissioners, Fifth Louisiana Levee District v. Commission on Ethics for Public Employees, supra, the Levee Board had sought an advisory opinion from the Ethics Commission. The Levee Board wanted to know whether Hesse, a former assistant attorney general who had represented the Levee Board in litigation, was prohibited by La.R.S. 42:1121 from contracting with the Levee Board to perform certain legal services after he resigned from his position as assistant attorney general. The Commission found that such services were prohibited and that Hesse could not be paid for legal services rendered before the opinion was rendered. The Levee District and Hesse sued for declaratory judgment and injunctive relief. Hesse appealed to this court the trial court’s determination that he had no cause of action for declaratory judgment, and its denial of partial summary judgment.
We found that Hesse had a real interest in obtaining a declaratory judgment and that a *598 justiciable controversy existed. He could not appeal from an advisory opinion, however, under the holding of Louisiana Commission on Governmental Ethics v. Leake, 264 So.2d 675 (La.App. 1st Cir.1972), and he had no available remedy to pursue. His only recourse was the courts. However, where the Commission had not initiated administrative action and therefore no right of appeal lay, he could not resort to declaratory judgment.
To allow the use of declaratory judgment would “involve the district court in questions of interpretation ... of the ethics code where the legislative scheme is to avoid Islitigation of these questions in the district court.” Hesse’s only remedy was the supervisory jurisdiction of this court, we reasoned, because an advisory opinion by the Commission is a preliminary or intermediate action or ruling by an ethics body within the meaning of R.S. 42:1142. Board of Commissioners, Fifth Louisiana Levee District, at 848; Midboe v. Commission on Ethics for Public Employees, 94-2770 (La. 11/30/94), 646 So.2d 351; In re Amtext, Inc., 625 So.2d 693 (La. App. 1st Cir.1993); City of Baton Rouge v. Commission on Ethics for Public Employees, 94-2480 (La.App. 1st Cir. 5/5/95), 655 So.2d 457; Board of Trustees of the Employees’ Retirement System of the City of Baton Rouge v. Commission on Ethics for Public Employees, 95-0062 (La.App. 1st Cir. 5/5/95), 655 So.2d 1355; In re Regions Banks of Louisiana and C.C. Dabadie, 95-0061 (La. App. 1st Cir. 12/15/95), 665 So.2d 824. Since the Commission handed down an advisory opinion in this case, it is clearly reviewable by this court under the cited cases as an intermediate ruling.
The Commission argues, however, that even if we are constrained by Board of Commissioners and its progeny to review advisory opinions under La.R.S. 42:1142, in this case we should remand the proceedings to the Commission.
LSU Board of Supervisors failed to provide copies of the proposed employment contracts between the new corporation and the LSU Medical School faculty members who would be employed by the new corporation. Although draft articles of incorporation are included in the record, they do not purport to be final versions of the documents.
It is uncertain how the medical school faculty would be paid and whether they would continue to perform clinical functions at the Medical School. The exact composition of the Board of Directors of the proposed new corporation is unclear, as is how much control might be exercised by the public employees in the new corporation. LSU Board of Supervisors indicates that the new corporation might enter into contracts with LSU Medical School to lease space and to purchase services; the content of such contracts is not in the record.
Although we are empowered to exercise supervisory jurisdiction over advisory opinions of the Commission under our interpretation of La.R.S. 42:1142(A), we are 19unable to determine from the record before us whether the Commission erred in deciding that LSU Board of Supervisors’ proposed course of conduct would violate the Code of Governmental Ethics.
LSU Board of Supervisors argues that the intent behind the proposed contract between medical faculty and a new corporation was to provide a new stream of patients for LSU Medical Center for research and teaching purposes, at a time when the health care industry is moving toward managed care. However worthy such a purpose is, it is impossible for us to determine whether it is prohibited by the Code of Governmental Ethics, or whether it would be fulfilled by the proposed transactions.
No hearing was held by the Commission. We remand these proceedings to the Commission with instructions that it exercise its administrative authority to hold a hearing. A hearing will allow LSU Board of Supervisors to present evidence and documents outlining its .plans more fully for LSU Medical School faculty to enter into the private practice of medicine through a private non-profit medical practice corporation.
Costs in the amount of $161.50 are assessed to LSU Board of Supervisors.
VACATED AND REMANDED.